IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| JENNIFER ANN JORDAN, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 4:21-cv-5-KPJ |
| | § | |
| KILOLO KIJAKAZI,[1] | § | |
| *Acting Commissioner of Social Security*, | § | |
| | § | |
| Defendant. | § | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Jennifer Ann Jordan ("Ms. Jordan") brings this appeal under 42 U.S.C. § 405(g) for judicial review of a final decision of the Commissioner of Social Security ("the Commissioner") denying her claim for disability insurance benefits.[2] Having considered the briefs submitted by the parties and the administrative record, the Court will **REVERSE** and **REMAND** the Commissioner's final decision for further proceedings.

### I.   APPLICABLE LAW

**A.   Sequential Evaluation Process**

To qualify for disability benefits, a claimant must establish that he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.1505(a).

---

[1] Kilolo Kijakazi became the Acting Commissioner of the Social Security Administration on July 9, 2021, and is automatically substituted as the defendant in this action. FED. R. CIV. P. 25(d).

[2] On January 4, 2021, this case was referred to the undersigned for pretrial proceedings pursuant to 28 U.S.C. § 636. On August 4, 2022, this matter was referred to the undersigned for all further proceedings and entry of judgment by consent of the parties. *See* Dkt. 23.

1

When considering a disability application, the Commissioner is required to use a five-step sequential evaluation process. 20 C.F.R. § 404.1520; *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). At the first four steps of the evaluation process, the claimant must show: (1) the claimant is not engaged in "substantial gainful activity"; (2) the claimant has a "severe medically determinable . . . impairment . . . or a combination of impairments" that has lasted or is expected to last for at least one year; and (3) the impairment(s) either meet or equal one of the Listings[3] of presumptively disabling impairments; or (4) the claimant is unable to perform his or her "past relevant work." 20 C.F.R. § 404.1520(a)(4)(i)–(iv); *Villa v. Sullivan*, 895 F.2d 1019, 1022 (5th Cir. 1990). If the claimant cannot show that his or her impairment meets or equals a Listing but proves that he or she is unable to perform his or her "past relevant work," the burden of proof shifts to the Commissioner, at step five, to show that the claimant is able to perform other work in the national economy, considering the claimant's residual functional capacity ("RFC"), age, education, and work experience. *Bowling v. Shalala*, 36 F.3d 431, 435 (5th Cir. 1994); *Graves v. Colvin*, 837 F.3d 589, 592 (5th Cir. 2016) ("The burden of proof is on the claimant for the first four steps but shifts to the agency at step five; a finding at any step that a claimant is or is not disabled ends the analysis.").

B.  **Standard of Review**

The standard of review in a social security appeal is whether the Commissioner's final decision[4] "is supported by substantial evidence in the record and whether the proper legal standards were used in evaluating the evidence." *Bowling*, 36 F.3d at 434 (quoting *Villa*, 895 F.2d at 1021). If substantial evidence supports the Commissioner's findings and the correct legal

---

[3] 20 C.F.R. pt. 404, subpt. P, app. 1.

[4] The Court's review is limited to the Commissioner's final decision, 42 U.S.C. § 405(g), which generally is the ALJ's decision, 20 C.F.R. § 416.1481, as it is in this case.

standards were applied, the Commissioner's decision stands, and the plaintiff is not entitled to relief. *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001).

"Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pena v. Saul*, 846 F. App'x 308, 309 (5th Cir. 2021) (internal quotation marks omitted) (quoting *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994)). "[I]t must be more than a scintilla, but it need not be a preponderance." *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995) (quoting *Anthony v. Sullivan*, 954 F.2d 289, 295 (5th Cir. 1992)). Substantial evidence "must do more than create a suspicion of the existence of the fact to be established, but 'no substantial evidence' will be found only where there is a 'conspicuous absence of credible choices' or 'no contrary medical evidence.'" *Bailey v. Saul*, 853 F. App'x 934, 935 (5th Cir. 2021) (quoting *Harrell v. Bowen*, 862 F.2d 471, 475 (5th Cir. 1988)). The Court "may not reweigh the evidence in the record, nor try the issues *de novo*, nor substitute [the Court's] judgment for the [Commissioner's], even if the evidence preponderates against the [Commissioner's] decision." *Bowling*, 36 F.3d at 434 (quoting *Harrell*, 862 F.2d at 475). Rather, evidentiary conflicts are for the Commissioner to decide, and "if a decision is supported by substantial evidence, it must be affirmed even if there is contrary evidence." *Bailey*, 853 F. App'x at 935 (citing *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990)). However, the Court must do more than "rubber stamp" the decision; the Court must "scrutinize the record and take into account whatever fairly detracts from the substantiality of evidence supporting the [Commissioner's] findings." *Cook v. Heckler*, 750 F.2d 391, 393 (5th Cir. 1985).

## II.    BACKGROUND AND PROCEDURAL HISTORY

Ms. Jordan was born in 1968, completed high school, and worked as a trade show manager, exhibits manager, account manager, and temporary office staff.[5] *See* Tr. 26, 264–65. On September 21, 2018, Ms. Jordan filed an application for Disability Insurance Benefits ("DIB"), alleging a disability onset date of April 30, 2012, due to "PTSD, Bipolar 1, General Anxiety Disorder, Major Depressive Disorder, Fibromyalgia, SLE Lupus, Degenerative Disc Disorder, Spinal Arthritis, Miagraine [sic], [and] Nueropothy [sic]." *See* Tr. 290, 378–86. The Social Security Administration ("SSA") denied Ms. Jordan's claim initially on November 26, 2018, and upon reconsideration on February 11, 2019. *See* Tr. 314–17, 321–23. Thereafter, Ms. Jordan filed a written request for a hearing. *See* Tr. 324–25. On April 28, 2020, Administrative Law Judge Michael E. Finnie (the "ALJ") held a hearing. *See* Tr. 257–88. The hearing was attended by Ms. Jordan, her attorney, and a vocational expert. *See* Tr. 257.

On June 1, 2020, the ALJ issued an unfavorable decision denying Ms. Jordan's claim. *See* Tr. 14–28. In his decision, the ALJ found that Ms. Jordan met the insured status requirements of the Social Security Act (the "Act") through September 30, 2016. *See* Tr. 19. At step one, the ALJ found that Ms. Jordan had not engaged in substantial gainful activity from April 30, 2012, her alleged disability onset date, through her date last insured of September 30, 2016. *See* Tr. 20. At step two, the ALJ found that Ms. Jordan had the following severe impairments: degenerative disc disease; lupus; fibromyalgia; obesity; affective disorder; bipolar disorder; and anxiety. *Id*. At step three, the ALJ found that none of Ms. Jordan's impairments, alone or in combination, met or medically equaled a Listing. *See* Tr. 20–22. Because the ALJ found that none of the impairments

---

[5] Documents 15-1 through 15-36 comprise the Administrative Record ("Tr."). When citing to the record, the Court cites to the Tr.'s internal pagination in the lower right-hand corner of each page, rather than to the CM/ECF document number and page.

met a Listing, the ALJ assessed Ms. Jordan's RFC. *See* Tr. 22–25. The ALJ found Ms. Jordan had the RFC to:

> perform less than a full range of sedentary work as defined in 20 CFR 404.1567(a) in that [she] is . . . occasionally able to lift/carry 10 pounds and frequently lift/carry less than 10 pounds. [She] can stand/walk for two hours out of an eight hour work day. She is able to sit for six hours out of an eight hours work day with normal rest periods. She cannot climb ladders, ropes, and scaffolds. She should avoid exposure to hazardous moving machinery and unprotected height. She is able to perform simple routine tasks learned by rote or short demonstration with simple instructions. She can tolerate few workplace changes with little judgement required. She is able to tolerate simple and direct supervision with no more than occasional interaction with the general public and coworkers.

*See* Tr. 22. At step four, the ALJ found that Ms. Jordan was unable to perform her past relevant work. *See* Tr. 26. At step five, the ALJ determined that considering Ms. Jordan's age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy she could perform. *See* Tr. 26–27. Relying on the VE's testimony, the ALJ determined that Ms. Jordan could perform occupations such as document preparer, addresser, and table worker. *See* Tr. 27. Accordingly, the ALJ concluded Ms. Jordan was not disabled within the meaning of the Act. *Id*.

Ms. Jordan requested that the Appeals Council review the ALJ's unfavorable decision. *See* Tr. 1, 375–77, 492–94. On November 5, 2020, the Appeals Council denied the request for review. *See* Tr. 1–5. Therefore, the ALJ's decision became the Commissioner's final decision. *See Sims v. Apfel*, 530 U.S. 103, 106–07 (2000); 42 U.S.C. § 405(g). Ms. Jordan timely filed her appeal to this Court on January 4, 2021.[6] *See* Dkt. 1.

---

[6] A claimant has sixty days to file an appeal. The sixty days begins running five days after the decision is mailed. 20 C.F.R. § 404.981; *see also* Tr. 2.

5

### III.  ANALYSIS

Ms. Jordan raises a single issue on appeal. She contends the Appeals Council erred by failing to consider additional evidence she submitted to the Appeals Council. *See* Dkt. 17 at 10–17. In response, the Commissioner contends the Appeals Council properly considered the additional evidence and further, that any mental functional limitations contained within the additional records were already accounted for in the ALJ's mental RFC assessment. *See* Dkt. 20 at 4–10. Ms. Jordan filed a reply, wherein she disputes the Commissioner's RFC argument. *See* Dkt. 21. For the reasons set forth below, the Court finds that the Appeals Council erred in its treatment of the additional evidence tendered by Ms. Jordan.

**A.  The ALJ's Mental RFC Assessment**

During the April 28, 2020 hearing, Ms. Jordan's attorney informed the ALJ that Ms. Jordan received regular mental health treatment at Adapt Institute of Texas ("Adapt") during the relevant time period between her alleged disability onset date and the date last insured. *See* Tr. 262; *see also* Tr. 1784 (letter from former Adapt employee indicating that she was Ms. Jordan's assigned case manager from June 2014 through March 2016). The attorney further represented that Ms. Jordan was unable to obtain any of her treatment records from Adapt because the provider "closed down." *Id.*; *see also id.* at 263 ("The claimant was receiving care within that period . . . at Adapt. Unfortunately[,] those records are no longer in existence."). Given the absence of Adapt records, Ms. Jordan's attorney apprised the ALJ that the administrative record included only limited mental health treatment records—consisting primarily of hospital records from Ms. Jordan's inpatient psychiatric hospitalization in July 2015 and an initial evaluation Ms. Jordan had at mental health

provider, LifePath Systems, in September 2016, shortly before her date last insured.[7] *Id.*; *see* Tr. 1040–1199 (inpatient psychiatric admission records); *see also* Tr. 1711–23 (September 2016 visits to LifePath for psychosocial assessment, psychiatric evaluation, and follow up care).

In his decision, the ALJ considered the limited mental health records that were available and assessed the following mental functional limitations in the RFC:

> She is able to perform simple routine tasks learned by rote or short demonstration with simple instructions. She can tolerate few workplace changes with little judgement [sic] required. She is able to tolerate simple and direct supervision with no more than occasional interaction with the general public and coworkers.

*See* Tr. 22. In arriving at this RFC, the ALJ first considered Ms. Jordan's allegations and hearing testimony regarding her mental impairments. *See* Tr. 22–23. He noted that Ms. Jordan's allegations found "some support in the administrative record" because she "had an inpatient psychiatric hospitalization for a few days in July 2015" where she received treatment for "suicidal ideation with medication stabilization" and because there was record evidence of Ms. Jordan appearing "anxious and frightened" at times. *See* Tr. 23. Ultimately, however, the ALJ concluded that Ms. Jordan's allegations regarding the severity of her mental impairments were not sufficiently supported by the record as a whole. *Id.* The ALJ stated that the record overall showed Ms. Jordan's thought process to be "logical and goal directed" without any signs of "mental or physical distress." *See* Tr. 24. Notably, the ALJ found that Ms. Jordan's "psychological presentation throughout the record was routinely unremarkable." *Id.* In particular, the ALJ noted the following mental exam findings from various dates during the relevant time period:

- "[Ms. Jordan's] thought process and cognitive functioning was intact."
- "While she appeared [t]o be tearful on exam, she was fully oriented with a good grasp of her surroundings."

---

[7] As Ms. Jordan points out in her opening brief, the administrative record also included treatment records concerning other conditions where medical providers mentioned Ms. Jordan's mental health and/or conducted partial or full mental status examinations. *See* Dkt. 17 at 3 n.3 (citing Tr. 499–500, 754).

- "[Ms. Jordan's] thought process was logical and goal directed. Her thoughts were well organized, and her frustration tolerance was unremarkable."
- "She was able to stay on task, and she was attentive, during medical evaluations."
- "She was able to maintain good eye contact."
- "[Ms. Jordan] does not have a history significant for repeated psychiatric hospitalizations."
- "[S]he was not hostile or combative towards her treatment providers."
- "Overall, she appeared to be cooperative."
- "[She] is able to communicate with others over the phone and in person."
- "Throughout the record, [she] appeared well groomed, calm and cooperative."
- "While [she] alleged that she has difficulty getting along with others[,] she reported that she was able to . . . spend time with her boyfriend and she is 'very happy.'"

*See* Tr. 24–25 (internal citations omitted). In addition, the ALJ noted that Ms. Jordan's activities of daily living—i.e., "performing simple chores, shopping for personal items, and managing her medical appointments"—were inconsistent with the degree of mental limitations she alleged. *See* Tr. 25. Thus, the ALJ assessed an RFC which Ms. Jordan admits in her briefing "came as little surprise given the limited record before [the ALJ]." *See* Dkt. 17 at 10.

### B. Appeals Council's Consideration of the Additional Evidence

After the ALJ issued an unfavorable decision, Ms. Jordan sought review from the Appeals Council. Ms. Jordan submitted additional evidence to the Appeals Council and requested the Appeals Council consider such evidence in its review of the ALJ's decision. The additional evidence consisted of: (1) medical records from Dr. Mike Shah, M.D., dated August 22, 2013; (2) medical records from Dr. Shah, dated November 20, 2007, through September 30, 2011; and (3) medical records from Adapt, dated February 28, 2011, through April 12, 2016, and March 5, 2010, through January 26, 2016. *See* Tr. 2. In denying Ms. Jordan's request for review, the Appeals Council determined that the first set of evidence above was already in the record, and the remaining evidence—including the Adapt records—"did not show a reasonable probability that [they] would change the outcome of the decision." *Id.* On appeal, Ms. Jordan's argument focuses on the Appeals Council's treatment of the Adapt records.

8

Under the applicable regulations, the Appeals Council is required to consider additional evidence if it is "new, material, and relates to the period on or before the date of the hearing decision, and there is a reasonable probability that the additional evidence would change the outcome of the decision." 20 C.F.R. §§ 404.970(a)(5), 416.1470(a)(5) (both effective Jan. 17, 2017 to Dec. 15, 2020). In addition, the claimant must show "good cause" for not submitting the additional evidence for the ALJ's consideration. 20 C.F.R. §§ 404.970(b), 416.1470(b) (both effective Jan. 17, 2017 to Dec. 15, 2020).

It is undisputed that the Adapt records are new. Moreover, there is no dispute that the Adapt records relate to the time period at issue. The Commissioner does not contest Ms. Jordan's good cause for the delayed submission of the Adapt records. The delay was attributed to the closure of the Adapt practice that previously treated Ms. Jordan and the resulting difficulty Ms. Jordan encountered in obtaining records from a shuttered practice. Because Ms. Jordan has presented a "legitimate reason why [the Adapt] evidence was not produced earlier," the Court finds she has shown good cause. *Schuler v. Saul*, 805 F. App'x 304, 306 (5th Cir. 2020) (quoting *Ripley v. Chater*, 67 F.3d 552, 556 (5th Cir. 1995)).

The parties' dispute on appeal, thus, centers on whether the Adapt records are material. "For evidence to be material, there must be a reasonable possibility that it would have changed the outcome of the [ALJ's] determination." *Schuler*, 805 F. App'x at 306 (cleaned up); *see also King v. Colvin*, No. 3:11-cv-1387, 2013 WL 6162965, at *3 (N.D. Tex. Nov. 22, 2013) (reviewing Fifth Circuit case law regarding the materiality standard and observing that the Fifth Circuit's "standard for determining whether new evidence is material is whether there is a reasonable possibility, not probability, that it would have changed the outcome of the disability determination"). The Fifth Circuit has explained:

9

> The concept 'material' suggests that the new evidence must be relevant and probative. However, not every discovery of new evidence, even if relevant and probative, will justify a remand to the Secretary, for some evidence is of limited value and insufficient to justify the administrative costs and delay of a new hearing. Thus we hold that a remand to the Secretary is not justified if there is no reasonable possibility that it would have changed the outcome of the Secretary's determination.

*Chaney v. Schweiker*, 659 F.2d 676, 679 (5th Cir. 1981). Furthermore, "[i]mplicit in the materiality requirement . . . 'is that the new evidence relate to the time period for which benefits were denied, and that it not concern evidence of a later-acquired disability or of the subsequent deterioration of the previously non-disabling condition.'" *Johnson v. Heckler*, 767 F.2d 180, 183 (5th Cir. 1985) (quoting *Szubak v. Sec'y of Health & Hum. Servs.*, 745 F.2d 831, 833 (3d Cir. 1984)).

Here, the Adapt records consist almost entirely of individual progress notes for telephone or at-home mental health visits conducted by various qualified mental health professionals ("QMHP") employed by Adapt. Though sparse in detail, the Adapt records contain treatment notes that are not consistent with the ALJ's findings. For example, although the ALJ noted that Ms. Jordan appeared well-groomed and calm in the records before him, the Adapt records contained several instances to the contrary. *See, e.g.*, Tr. 61, 64 (June 2013 and August 2013 visits where Ms. Jordan's "hygiene and grooming was minimum"); Tr. 75 (July 2014 visit where Ms. Jordan reported not having showered for three days); Tr. 76 (August 2014 visit where Ms. Jordan's appearance was reported as "fair, somewhat disheveled and slightly malodorous"); Tr. 111 (April 2015 visit where Ms. Jordan called the clinic to report feeling manic while in tears and breathing frantically, which prompted clinic to advise her to go to emergency room, which Ms. Jordan refused to do); Tr. 115 (May 2015 visit where appearance was "fair, somewhat disheveled"); Tr. 116 (May 2015 visit where Ms. Jordan's appearance was reported as fair and she presented with "mood swings, varying from pleasant, irritable, and tearful").

Likewise, while the ALJ found that Ms. Jordan did not appear to be in mental distress, several Adapt records contained notations of suicidal ideations, increased depression, irritable moods, and erratic sleep habits. *See, e.g.*, Tr. 60 (June 5, 2013 visit reporting depression, irritable mood, and erratic sleep patterns); Tr. 61 (June 21, 2013 visit where Ms. Jordan appeared lethargic and reported "SI two or three times per week with no plan or intent."); Tr. 68 (March 23, 2015 visit where Ms. Jordan presented as "irritable and angry" and reported "fleeting" suicidal ideations, high anxiety, and "feels herself 'going into a manic episode,' as evidenced by high blood pressure intense sweating, difficulty concentrating, and increased energy throughout the day"); Tr. 73 (July 17, 2014 visit where she reported feeling depressed); Tr. 75 (July 23, 2014 visit reporting "obsessive" suicidal ideations over the weekend, being depressed with "several periods of crying," "extreme anxiety over the weekend, no appetite, and spent an excessive amount of time in bed, and did not shower"); Tr. 78 (August 2014 visit where she stated she was spending most of her time in bed for the past few days and had some suicidal ideations); Tr. 121 (July 2015 visit where QHMP met with Ms. Jordan at her home for crisis intervention after she called Adapt "displaying symptoms of rapid cycling mania and depression, as evidenced by brief periods of crying and stating 'I want to blow my f*ing head off!' followed by brief periods of hysterical laughter and saying 'What is wrong with me?! This is not normal!' She stated that she does not have a gun but could probably get one from a pawn shop; back up plan to overdose on meds while drinking alcohol"); Tr. 130 (July 29, 2015 visit noting that Ms. Jordan was hospitalized for "suicidal ideation with a desire to shoot herself in the head if she could find a gun").

Moreover, although the ALJ found that Ms. Jordan appeared "goal directed," several QHMPs at Adapt expressed that Ms. Jordan struggled to follow through with medical directives, as well as efforts to seek housing and complete paperwork for various assistance programs. *See,*

*e.g.*, Tr. 76 ("She seems to be struggling with decision making and asked [provider] several times 'What should I do? What do I need to be working on?' She seems to lack motivation to follow through with needed tasks, such as applying for SSI and applying for indigent care."); Tr. 78 (August 19, 2014 visit where Ms. Jordan reported that "she still needs to run in more paperwork, but has little motivation in doing so"); Tr. 79 (August 25, 2015 visit where Ms. Jordan reported she still had not completed the indigent care packet and the SSI paperwork); Tr. 84 (September 2014 visit where Ms. Jordan "appeared to be in a lot of physical pain but had little motivation to attempt to see another doctor"); Tr. 99 (November 2014 visit where she reported missing primary care appointments because "she did not feel like going"); Tr. 88 (October 2014 visit where Ms. Jordan appeared "somewhat reluctant with med compliance, as evidenced by losing the Klonipin and not taking the Wellbutrin for weeks after it was prescribed").

In addition to the Adapt records being particularly probative because they comprise the primary evidence of Ms. Jordan's mental impairments during the period at issue, the Adapt records also suggest greater psychological limitations than those assessed by the ALJ. *See Lee v. Colvin*, No. 4:14-cv-418, 2016 WL 310282, at *8 (E.D. Tex. Jan. 26, 2016) (determining that additional evidence submitted to the Appeals Council was material because it "suggest[ed] greater psychological limitations than those included by the ALJ"). Moreover, because the substance of the Adapt records is not entirely consistent with the records upon which the ALJ relied in formulating the mental RFC assessment, the Court finds the Adapt records raise a reasonable possibility that the ALJ would have reached a different outcome. *See Bird v. Colvin*, No. 3:15-cv-63, 2016 WL 1273463, at *10 (N.D. Tex. Mar. 31, 2016) (finding additional mental health records submitted to Appeals Council were immaterial because the substance of the additional records was consistent with the records the ALJ relied on). Accordingly, the Appeals Council erred in finding

that the Adapt records were not material. Because "[a]ssessing the probative value of competing evidence is quintessentially the role of the fact finder," the Court concludes that remand is warranted. *See Sun v. Colvin*, 793 F.3d 502, 513 (5th Cir. 2015) (determining that new evidence submitted to Appeals Council was significant and cast doubt on ALJ's findings such that remand was warranted so that the ALJ could reconcile the new evidence "with other conflicting and supporting evidence in the record").

## IV.  CONCLUSION

For the foregoing reasons, the Commissioner's final decision is **REVERSED** and **REMANDED** for further proceedings.

**So ORDERED and SIGNED this 5th day of August, 2022.**

_____
KIMBERLY C. PRIEST JOHNSON
UNITED STATES MAGISTRATE JUDGE